# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ROBERT LOMACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09cv0557 TCM |
| ) | |
| WILLIAM McKINNEY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This pro se 42 U.S.C. §1983 complaint is before the Court on the motion of the remaining defendant, William McKinney, for summary judgment.[1] [Doc. 54] Plaintiff has not responded to the motion in the five months in which it has been pending.

## Background

Plaintiff alleges in his verified complaint that he was injured in August 2001 when a food cart fell on his left leg. (Compl. at [9].) This injury resulted in chronic numbness in his back and left leg. (Id.) In July 2004, he was transferred to the Potosi Correctional Center (PCC). (Id. at [10].) There, he saw Dr. William McKinney after the previous doctor left. (Id.) Plaintiff told him of the persistent numbness lasting for at least three years and of it spreading to both arms, hands, and feet and to his right leg. (Id.) McKinney initially refused

---

[1]Plaintiff initially named nineteen defendants. Thirteen were dismissed by the Honorable Charles A. Shaw, Senior United States District Judge for the Eastern District of Missouri, for failure to state a claim, failure to include allegations that would lead to the discovery of the identify of "unknown" defendants, or as barred by the applicable statute of limitations. Three were later dismissed on the grounds Plaintiff had failed to exhaust required administrative remedies. Two were dismissed for failure to prosecute.

to treat Plaintiff, believing him to only want a drug to get "high," but after approximately one year of hearing Plaintiff's complaints, had an x-ray taken and referred him to a physical therapist. (Id.) The exercises recommended by the therapist did not help. (Id. at [11].) McKinney later ordered a magnetic resonance imaging (MRI) of Plaintiff. (Id.) The MRI was read by another doctor, who said Plaintiff had nerve damage and needed surgery. (Id.) The doctor also said there was nothing that he could do about the nerve damage because it had been untreated for so long. (Id.)

Relevant factual allegations established by the unrefuted record are as follows.

In July 2004, Plaintiff was diagnosed when at PCC with mild degenerative joint disease in the lumbar and cervical spine. (See Def. Stip.[2] ¶ 24.) McKinney treated Plaintiff from March 2005 to April 2009. (Id. ¶¶ 26-104.) In August 2005, Plaintiff first complained to McKinney about pain in his right shoulder for the past month and paresthesia (numbness or tingling) in his right upper arm and left foot. (Id. ¶ 34; Def. Ex. A at 371.) Plaintiff informed McKinney that there had been "no change" since a previous doctor had prescribed Elavil for him. (Id.) Noting that, on examination, Plaintiff had "no weakness or right suprapinatus but positive weakness [on] external rotation and impingement," McKinney prescribed Tylenol for pain and ordered x-rays of Plaintiff's right shoulder. (Id.) X-rays

---

[2]"Stip." refers to statements of uncontroverted material facts that are uncontroverted by Plaintiff and are supported by the verified exhibits submitted by McKinney in support of those statements.

were taken four days later and showed no evidence of fracture, malalignment, or acute disease. (Def. Stip. ¶ 35; Def. Ex. A at 372.)

The following month, after examining Plaintiff for his complaints of right shoulder pain and numbness, McKinney requested x-rays of his cervical spine and a physical therapy evaluation and course for his shoulder. (Def. Stip. ¶ 36.) The x-rays revealed an "essentially normal cervical lordosis." (Id. ¶ 37.) When McKinney again saw Plaintiff, on October 3, he noted that Plaintiff reported he had been doing shoulder exercises and, following a physical therapy evaluation, had added exercises to his regimen. (Def. Ex. A at 376.) Plaintiff further reported that the range of motion in his shoulder had increased – he could raise his arm without having to raise his shoulder – and he was more comfortable, although he still had paresthesia. (Id.) He was to continue with his exercises and return in one month. (Id.)

One month later, on November 4, Plaintiff reported to McKinney that he had an essentially normal range of motion in the shoulder and was pleased. (Id. at 377.) He also had continuing paresthesia in his right upper extremity, new paresthesia in both legs, and pain in both knees. (Id.) He was lifting weights and doing leg presses; his legs were "too tired to walk." (Id.) On examination, he had no instability or palpable defect in his knees and no sensory loss to touch in his legs. (Id.) He was to have his left knee x-rayed; he was given exercises for his legs; and he was offered Tylenol, but declined. (Id.)

On November 30, Plaintiff complained to McKinney of muscle numbness and paresthesia in his hands, shoulders, legs, and middle of his lumbar spine. (Id. at 391; Def.

Stip. ¶ 40.) On examination, he had a rapid gait and no palpable defect in his neck or back. (Def. Ex. A at 391.) He could quickly get on and off the examination table and could use both hands equally well. (Id.) McKinney diagnosed Plaintiff with chronic paresthesia and opined that his complaints were out of proportion to the objective evidence. (Id. at 391-92.) The next month, on December 29, Plaintiff reported to McKinney that he was sleeping well and the paresthesia in his arms and hands had improved. (Def. Stip. ¶ 42.)

Plaintiff was placed in an administrative "dry cell" in January 2006. (Id. ¶ 43.) His hands and feet were cuffed and restrained. (Id.) He complained "several times" about pain caused by the restraints.[3] (Id. ¶ 45.) On March 29, he complained to McKinney of "'shooting pain across [his] shoulders, down [his] back, both legs and [his] arms.'" (Id. ¶ 46.) He did not need any assistance to get on and off the examination table and could rapidly turn his neck and head from side to side without any indication of discomfort. (Id.) McKinney again noted a discrepancy between Plaintiff's complaints of pain and his examination findings. (Id.)

McKinney saw Plaintiff again on June 28. (Id. ¶ 48-49.) Plaintiff complained of paresthesia from his shoulders to his hands and from mid-calf to toes. (Def. Ex. A at 424.) He had no "actual pain." (Id.) He was sleeping well, but reported that he was unable to bend due to discomfort. (Id.) McKinney observed Plaintiff easily step on the scale, bend forward 45 degrees to read his weight, and then quickly straighten up. (Id.) He was able to get

---

[3]Because of the cuffs, McKinney gave Plaintiff a medical lay-in. (Def. Ex. A at 449.)

- 4 -

quickly off the examination table, had a rapid gait, and walked with a slight limp on his left side. (Id.) Plaintiff was to begin a walking and exercise program when he was released from administrative segregation in five months. (Id. at 425.) Plaintiff returned to the general population in October 2006. (Def. Stip. ¶ 50.)

In November, Plaintiff complained to McKinney of paresthesia in his hands and pain in his legs and feet. (Id. ¶ 51.) He had a job sweeping and distributing and picking up food trays. (Id.) He was walking thirty minutes twice a week. (Id.) His cell was too cold; McKinney recommended a warmer cell. (Id.)

Plaintiff reported to McKinney the next month that he was okay when walking and sitting, but felt pressure and "heaviness" in his lower back when standing. (Id. ¶ 52.) McKinney diagnosed chronic back pain and recommended the lay-in, see note 3, supra, be extended. (Id.)

On February 19, 2007, Plaintiff reported to a nurse that he was having difficulty walking due to leg pain and needed to (a) immediately see a doctor and (b) have his lay-in extended. (Def. Ex. A at 497.) McKinney saw Plaintiff on March 9, noting that Plaintiff had increased muscle weakness. (Def. Stip. ¶ 54.) X-rays of Plaintiff's left hip and knee were negative. (Id.) When McKinney saw Plaintiff again, on April 20, he noted that Plaintiff was dragging his left leg, had impaired balance, and had difficulty walking. (Id. ¶ 55.) Concerned about Plaintiff's progressive and intermittent paresthesia and muscle weakness in his legs, McKinney requested a MRI of Plaintiff's brain to rule out multiple sclerosis. (Id.) The MRI was normal. (Id.)

On May 1, McKinney ordered that Plaintiff be allowed to use a wheelchair when outside his housing unit. (Id. ¶ 56.) On May 25, he consulted with a neurologist, Dr. Dean, who recommended a high-resolution MRI of Plaintiff's spine. (Id. ¶ 57.) McKinney ordered the MRI, which, when taken on June 6, showed a narrowing of the disc space at L4-L5 and some cortical irregularity with grade 1 spondylolisthesis at L5. (Id. ¶ 57-58.) The overall impression was of mild to moderate lumbar spondylosis. (Id. ¶ 58.)

Six days later, McKinney requested an evaluation from an orthopedic surgeon, Dr. John Spears, who recommended a cervical laminectomy and fusion to "'prevent an irreversible loss of independent ambulation.'" (Id. ¶ 59.) Plaintiff agreed to the surgery, which was performed on July 11. (Id. ¶ 66.) Monitoring Plaintiff's recovery after the surgery, McKinney saw him twelve times in the next three weeks. (Id. ¶¶ 67, 69-79.)

Between August 2007 and February 2009, McKinney saw Plaintiff numerous times, prescribing medications, issuing medical orders, recommending exercises, and issuing lay-ins to prevent Plaintiff from having his hands cuffed behind his back. (Id. ¶¶ 81-102.)

On February 20, 2009, Plaintiff requested that McKinney give him a lay-in allowing him to use a wheelchair when outside of his cell and to be cuffed in front when in a wheelchair. (Def. Ex. A at 721.) He was using a cane when in his cell. (Id. at 722.) McKinney observed Plaintiff "frequently moving about in wheelchair, double cuffed behind" and "arise from wheelchair to be weighed with minimal assistance . . . ." (Id. at 791-92.) He gave Plaintiff a lay-in for the wheelchair but not one to be cuffed in front. (Id. ¶ 792.)

Two months later, this action was filed.

McKinney argues in his pending motion that he is entitled to summary judgment as a matter of law because (1) Plaintiff has not, and is unable to, establish that his complaints of numbness are a serious medical need that McKinney was deliberately indifferent to and (2) Plaintiff has not, and cannot, establish that any alleged delay in medical care provided by McKinney caused or contributed to any nerve damage or had any detrimental effect on Plaintiff's long-standing chronic back and nerve problems. As noted above, Plaintiff has not responded to the motion.

## Discussion

"'Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" **Loeb v. Best Buy Co.**, 537 F.3d 867, 871 (8th Cir. 2008) (quoting Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007)). When making this determination, the Court views the evidence, and any reasonable inferences therefrom, in the light most favorable to Plaintiff. **Id.** In opposing a properly-supported motion for summary judgment, Plaintiff may not "merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." **Bass v. SBC Commc'ns, Inc.**, 418 F.3d 870, 872-73 (8th Cir. 2005). See also **Norman v. Schuetzle**, 585 F.3d 1097, 1103 (8th Cir. 2009) ("[W]hile [the Court] [is] required to make all reasonable inferences in favor of the non-moving party, [it] doe[es] not resort to speculation."). The allegations made by Plaintiff

in his verified complaint, see 28 U.S.C. § 1746, will be treated as if made in an affidavit. **Roberson v. Hayti Police Dep't**, 241 F.3d 992, 995 (8th Cir. 2001).

Those allegations are that McKinney was indifferent to Plaintiff's serious medical needs and delayed treating Plaintiff's serious medical needs, thereby causing permanent and serious nerve damage. These allegations, liberally construed, see **Estelle v. Gamble**, 429 U.S. 97, 106 (1976), describe deliberate indifference to Plaintiff's serious medical needs.

"It is well established that '[d]eliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment.'" **Langford v. Norris**, 614 F.3d 4445, 460 (8th Cir. 2010) (quoting Gordon ex rel. Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006)); accord **Krout v. Goemmer**, 583 F.3d 557, 567 (8th Cir. 2009); **Phillips v. Jasper Co. Jail**, 437 F.3d 791, 795 (8th Cir. 2006). "Deliberate indifference requires a showing that the medical provider knew of and disregarded a serious medical need. A medical need is serious when it has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." **Id.** (interim citation omitted). Also, "'a showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions.'" **Pietrafeso v. Lawrence County, S.D.**, 452 F.3d 978, 983 (8th Cir. 2006) (quoting Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006)).

Assuming, without deciding, that Plaintiff's medical needs were objectively serious, he must then "clear a substantial evidentiary threshold to show [McKinney] deliberately

disregarded [his] needs by administering inadequate treatment." **Nelson v. Shuffman**, 603 F.3d 439, 449 (8th Cir. 2010). Whether he has done so is a fact-intensive inquiry. **Id.** at 448; accord **Hartsfield v. Colburn**, 491 F.3d 394, 397 (8th Cir. 2007).

The facts in the instant case show that Plaintiff first complained to McKinney about pain in his right shoulder and paresthesia in his right arm and left foot in August 2005. At that time, there was a diagnosis in the record of mild degenerative joint disease in his lumbar and cervical spine. On examination, Plaintiff had some weakness in his right shoulder; x-rays were ordered and were negative. Plaintiff's complaints of right shoulder pain and numbness continued; x-rays of his cervical spine and physical therapy were ordered by McKinney. X-rays were negative. The following month, in October, Plaintiff reported that the range of motion in his right shoulder had increased and he was more comfortable. In November, he had a normal range of motion in that shoulder and was pleased. Plaintiff reported other problems to McKinney, i.e., continuing paresthesia in his right shoulder, new paresthesia in both legs, and pain in both knees. He had no sensory loss of touch in his legs and no instability in his knees. He declined Tylenol.[4] In the next few visits to McKinney, there were noted discrepancies between Plaintiff's complaints and his actions. For instance, he complained of being unable to bend forward but then did so. When McKinney noted in February 2007 the progressive and intermittent nature of the paresthesia and muscle

---

[4]See **Logan v. Clarke**, 119 F.3d 647, 649 (8th Cir. 1997) (holding that prisoner could not establish Eighth Amendment violation when he rejected pain medication offered by prisoner doctors as such an offer demonstrated that the doctors were not consciously disregarding his medical needs).

weakness in Plaintiff's legs, he ordered an MRI to rule out multiple sclerosis. It was normal. Three months later, McKinney consulted a neurologist and followed his recommendation for a high-resolution MRI of Plaintiff's spine. When the findings failed to explain Plaintiff's symptoms, McKinney consulted an orthopedic surgeon; his recommendations were also followed.

Thus, the record shows McKinney saw, treated, and evaluated Plaintiff for his complaints, ordering tests, physical therapy, and lay-ins and consulting specialists in an effort to address the cause of those complaints. He was not deliberately indifferent to Plaintiff's medical needs. Whether McKinney should have taken a different course of treatment is not at issue. It is also well established that "'[a] prisoner's mere difference of opinion over . . . a course of medical treatment fail[s] to rise to the level of a constitutional violation.'" **Nelson**, 603 F.3d at 449 (quoting Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992)) (third alteration in original); accord **Langford**, 614 F.3d at 460; **Jenkins v. County of Hennepin, Minn.**, 557 F.3d 628, 632 (8th Cir. 2009).

A liberal construction of Plaintiff's complaint includes an argument that a delay by McKinney in getting an evaluation by the orthopedic surgeon violated his Eighth Amendment rights. "'[I]t is well settled that an intentional delay in obtaining medical care for a prisoner who needs it may' violate the Eighth Amendment." **Plemmons v. Roberts**, 439 F.3d 818, 823 (8th Cir. 2006) (quoting Ruark v. Drury, 21 F.3d 213, 216 (8th Cir. 1994)). When the allegations are that a delay in medical treatment constituted deliberate

indifference, "'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" **Coleman v. Rahija**, 114 F.3d 778, 784 (8th Cir. 1997) (quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir.1997)). "An inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs." **Id.**

Plaintiff has failed to establish a genuine issue of material fact whether any delay in treatment worsened his condition. Although he alleges in his verified complaint that a doctor told him there was nothing he could do about nerve damage to Plaintiff because it had gone untreated for too long, Plaintiff has failed to submit the doctor's supporting affidavit.[5] Plaintiff's repetition of the alleged statement cannot be considered on summary judgment. See **Colenburg v. Starcon Int'l, Inc.**, 619 F.3d 986, 993 (8th Cir. 2010); **Murphy v. Mo. Dep't of Corrs.**, 372 F.3d 979, 982 (8th Cir. 2004). Thus, McKinney is entitled to summary judgment on Plaintiff's delay in treatment claim. See **Logan**, 119 F.3d at 650 ("Although the prison doctors may not have proceeded from their initial diagnosis to their referral to a specialist as quickly as hindsight perhaps allows us to think they should have, their actions were not deliberately indifferent. The doctors made efforts to cure the problem in a reasonable and sensible manner.").

---

[5]The Court notes that medical evidence is not necessary when the need or the alleged deprivation is "*obvious to the layperson*." **Roberson v. Bradshaw**, 198 F.3d 645, 648 (8th Cir. 1999). The harm alleged by Plaintiff would not be obvious.

## Conclusion

The unrefuted evidence properly before the Court establishes that the William McKinney was not deliberately indifferent to Plaintiff's serious medical needs and did not violate his Eighth Amendment rights. Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment of defendant William McKinney for summary judgment is **GRANTED**. [Doc. 54]

An appropriate Judgment shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  17th  day of  November, 2010.